JAMES S. WILSON *vs.* THE YORK AND MARYLAND LINE RAIL ROAD COMPANY.—*December* 1839.

Where the parties agreed that the work to be done by the plaintiff for the defendant, should be measured by an agent in the employment of the defendant, whose measurement should be final and conclusive, it is indispensable, if he can be procured, that such agent should himself measure the work, and the court erred in instructing the jury that the measurement of a third person would be conclusive, (in the absence of fraud,) provided it was adopted by the agent designated by the parties.

An agent, unless expressly authorized, has no right to delegate his authority to another, the maxim being, *that delegatus non potest delegare.*

In making the measurement, it is not necessary that the agent should give previous notice thereof to the parties, that they may be present at the performance of that duty.

But if such agent is to make an estimate of certain expenses to be allowed the plaintiff, and he proceeds to do so, in the absence of, and *without* notice to the plaintiff, the latter will not be bound by the estimate.

The estimate of the expenses, will not be affected by the inadequacy of the amount, or the neglect of the agent to employ the usual and proper means of informing himself upon the subject, provided his conduct is *bona fide ;* a fact to be submitted to the jury.

Gross negligence does not in construction of law, amount to fraud, but is evidence to be left to the jury, from which they may infer fraud, or the want of *bona fides.*

APPEAL from *Baltimore* County Court.

This was an action of *assumpsit,* brought on the 24th August 1837, by the appellant against the appellees, in which

the plaintiff declared for work and labor done, materials found; matters properly chargeable in account, and on an account stated. The following account was parcel of the declaration:

*York and Maryland Line Rail Road Company,*

To *James Wilson,* Dr.

To 353 $\frac{44}{100}$ perches of masonry on the 72nd section
   of the York and Maryland line rail road, at $2 50
   per perch,  - - - - - $883 60
To 587 $\frac{14}{100}$ perches of masonry on the 74th section
   of York and Maryland line rail road, at $2 50,  1,467 85
To 1196 $\frac{67}{100}$ perches of masonry on the 86th sec-
   tion York and Maryland line rail road, at $2 50, 2,991 67
To 340 perches of masonry on the 86th section of
   York and Maryland line rail road—Centrepier—at
   $2 87,  - - - - - 980 20

                                $6,323 40
By cash,  - - - - 5,000

                                $1,323 40
To expenses in bailing water from the foundation of
   the bridges and masonry work on the 72nd, 74th
   and 86th sections of the York and Maryland line
   rail road,  - - - - - 606 06

                                $1,929 46

The defendants pleaded *non-assumpsit,* on which plea issue was joined, and the parties then filed in court the following agreement:

It is admitted, that the estimate or paper following, viz:

"The following estimate of water expenses on masonry, sections 72, 74 and 86, is presented:

Bailing on sections 72 and 74,  - - $50
Coffer dam on 86th,  • - - - - 85
Extra digging on south abutment,  - - 10
Bailing water on 86th,  - - - - 50
Removing Coffer dam by change of pier,  - 25

      *Isaac Trimble.*       $220

Add to the aforegoing for money paid for hewing
timber for bridge,        -        -        -        -        11 19

                                                              $231 19

Was executed by *Isaac Trimble*, and handed to the plain-
tiff in this cause, and that he meant it to be an estimate of the
water expenses, as provided for by the contract, and that no
notice was given to the plaintiff, before the said estimate was
made of the design of the said Trimble to make it."

The plaintiff at the trial offered in evidence the following
contracts :

"Articles of agreement made and concluded this 7th day of
    January, 1830, by and between *James S. Wilson* of the one
    part, and the *York and Maryland line rail road company*, by
    their agent for the time being, *Isaac Trimble*, of the second
    part.

Whereas, the party of the first part hath agreed for, &c., to
construct and complete, in a thorough and workmanlike man-
ner, the masonry, which in the opinion of the engineer, may
be required for the bridge abutments on section No. 86, of the
said rail road, which masonry shall be constructed in the
strongest and most substantial manner, the foundations to be
of such strength and depth, and secured as the engineer may
direct.    All walls and other portions of said masonry, to be
of such thickness, slope, heighth and length, as the engineer
shall prescribe.    No stone shall be used but such as has been
approved by the engineer.    The character of the masonry for
bridge abutments, shall be what is commonly called "range
course work," that is, the masonry shall be laid in courses of
various heights, of not less than one foot each course, to ex-
tend horizontally in uniform thickness throughout the face of
the abutments and wings, each stone to be rough hammered,
unless with a natural face at top and bed, so as to lay with a
firm and even bearing on those beneath; the points are not
required to be vertical, but shall be well fitted and composed
of stones of corresponding shapes.    No stone, unless by the
authority of the engineer, shall be admitted into the abutments

or wings, of less than the following dimensions—one foot in thickness, two feet in breadth, three feet in length, or containing four cubic feet, and the bed of every stone shall be greater than its rise; each stone shall break joint with those below and around it, and to be laid without underpinning, should the engineer so direct, who shall also at his discretion cause such headers to be introduced as will bind the whole firmly together. The whole to be laid without mortar. In case the engineer should deem it proper or expedient to change the character of the masonry of bridge abutments and wings, or any part of them, to what is called range rubble work, he may do so, and the same shall be constructed accordingly, by the party of the first part. The character of the masonry for gothic arches, common culverts and detached walls, shall be of the kind commonly called "range rubble work," laid dry. They shall be built in the most substantial manner, the stones breaking joints, bedded firmly, and binding on each other so as to unite the whole firmly and permanently together, to the satisfaction of the engineer. In case timber for foundations shall, in the opinion of the engineer be required, it shall be furnished and laid by the party of the first part, at the rate of                     dollars per thousand, board measure. The said party of the first part, shall not let or transfer his contract without the consent of the said agent, and shall, upon his application, discharge from his employ any laborer or workman guilty of improper or disorderly conduct, &c.

Now this agreement witnesseth, that the said party of the first part, doth for himself, his heirs, executors and administrators, hereby covenant and agree with the said party of the second part, that he the said party of the *first* part shall and will, well and faithfully, in a mechanical and workmanlike manner, on or before the first day of June, construct and complete in the manner and on the conditions herein mentioned, all such abutments, wing walls, gothic arches, common culverts and detached walls, as said agent shall direct, on the aforesaid section of road, and if in the opinion of said agent, any gothic arches, common culverts or detached walls shall be

required, in order to carry on the embankments of said section, the same shall be begun and rapidly completed, when directions to that effect are given by the engineer. And the said party of the first part, shall remove all earth, gravel, stone or timber, or other materials, which in the opinion of the engineer may obstruct the free passage of the water to, under and from such bridges or culverts, as may be built in pursuance of these articles of agreement.

In consideration whereof, the said party of the second part, for and on behalf of the said company, doth hereby covenant and agree to, and with the said party of the first part, his heirs, executors and administrators, that the said company shall and will, for performing the work aforesaid, well and truly pay to the party of the first part, his heirs, executors or administrators, at the rate of two dollars and fifty cents for each and every perch of twenty-five cubic feet, which the bridge abutments may contain, and            dollars and cents for each and every perch, which all gothic arches, common culverts or detached walls may contain. *The whole to be measured by said agent or the engineer for the time being, whose measurement shall be final and conclusive.* Payments during the progress of the work shall be made at the discretion of the said agent or engineer, until the whole of the work hereby constructed shall be completed and accepted by the engineer, when the balance shall forthwith be paid to the said party of the first part, his heirs, executors or administrators. And the said party of the first part shall have the right to quarry and remove stone from any part of the land of the said rail road, provided in the opinion of the engineer for the time being, no interruption or danger is done to the graduation. And in case the said party of the first part takes stone from a section of which he is the contractor for graduation, the price of the masonry shall be reduced per cubic yard, by as much as he is paid per cubic yard on the excavation of such in his section. And it is further provided, that in case the said party of the first part, shall not, in the opinion of the engineer for the time being, well and truly perform all the covenants herein before

stated and stipulated on his part, the said engineer may, at his discretion, dismiss him from the work; and that then, and in that event, the foregoing agreement shall become null and void, and any balance for work done, which would have been due, the said party of the first part shall be forfeited, and become the right and property of the company. And moreover, if in the opinion of the engineer for the time being, the said party of the first part, shall not make such progress in the work, as to insure its completion by the specified time, the said agent or engineer for the time being, may, at his discretion, employ other help to hasten the completion of the masonry on said section, and the expense of such help shall be paid by the party first mentioned. In testimony whereof, the parties have set their hands and seals, the day and date first mentioned. Isaac Trimble, (Seal.)

James S. Wilson, (Seal.)

It is hereby agreed and understood by the parties to this contract, that the foundation shall be prepared at the expense of the said *J. S. Wilson*, the bailings of water excepted, which shall be paid for by said company at the estimate of the engineer. It is moreover agreed, that for the construction on section 86, the said *J. S. Wilson* shall be paid at the rate of two dollars and eighty-seven cents. The character of masonry, the same as above described.

Isaac Trimble, (Seal.)

James S. Wilson, (Seal.)

The second agreement for other sections 72 and 74, was like the first, except in the following clause at foot of the second, in place of that in the first contract.

It is fully understood and agreed by the parties to this contract, that the foundations shall be dug at the expense of the said *J. S. Wilson*, and the cost of bailing out water at the estimate of the engineer. Isaac Trimble,

*Witness,*—Jo: Sterett. James S. Wilson."

The plaintiff further proved by *John W. Collins,* that he admeasured the said bridges, and that they contained in the whole, 2,478 $\frac{22}{100}$ perches, amounting to $6,323.40.

That said admeasurements were made so far as he was enabled to see the masonry work, by the actual application of the line, to the face of the work.    That the depths of the foundation of the bridge, on the sixteenth section, were given him by the plaintiff upon the ground, that he measured all above the foundation by his line, except the thickness of the walls of the abutment and wings; that he obtained the thickness of the abutment and wings from a plan shewn by the plaintiff.  That the wing walls are curved; that he measured them by straight lines, and that this mode of measurement would give about the true contents of perches, though not perfectly and exact, but sufficiently so for an adjustment of the price.

The plaintiff further proved by *Earlocker*, a witness sworn on his behalf, that he was the superintendent of the plaintiff, in the erection of the said bridge from its foundation, for five months, when all the heavy masonry work was nearly completed.    That *Mr. Crittenden* was the assistant engineer of the defendants, and one of the persons appointed by them to direct the construction of said bridge; that witness dug the foundations as superintendent; had them dug; that after they were completed, the witness and *Mr. Crittenden* measured the foundations, and averaged them; that the foundation of the abutment, was three feet six inches, of the east wing the same, of the west wing two feet and eleven inches, and the pier five feet.    The witness further proved, that above the foundations he conducted the work according to the directions of *Mr. Crittenden*, and the plan furnished by the *latter;* that upon said plan, the thickness of the walls of the abutments, the wings and the pier are marked, and the work was actually done according to said plan, so long as the witness remained thereon.    The plaintiff further proved, that the depths of the foundation as aforesaid, and the thickness of the walls, were the same as those assumed by *Mr. Collins* in his said admeasurement, and that the plans to which *Collins* referred in his testimony, are the same that were handed to the said witness to govern his work, and that the work was finished according to the thickness marked thereon.    The plaintiff further

proved that he paid for water expenses or the bailing of water on the 72nd, 74th and 86th sections under his contracts, the sum of $619.56.

The object of the above proof was to show the cost and value of the work done in bailing water. The plaintiff then further proved by *Earlocker*, that he superintended the whole operation of bailing the water on the 86th section, and that he was there from the beginning to the end; that the hands were good and industrious; that they worked by night as well as day, in the fall and winter. That there was a flood while they were at work, which greatly increased the difficulty of the work. That *Mr. Trimble*, the engineer of the company, was not at work once, as he saw, during the continuance of the bailing. And also proved by said witness and *Mr. Wilson*, another witness, who stated he had great experience in such matters; that it would be impossible to tell from mere inspection of the bailing as it progressed, what would be the proper cost thereof; that the usual mode of ascertaining its cost, is by keeping the time of the hands.

The defendants then proved by *Mr. Crain*, an *assistant* engineer, in the service of the defendants, that he measured the bridges constructed by the plaintiff on the 72nd, 74th and 86th sections of the York and Maryland line rail road, and that the final estimate for masonry amounted to $5,516.03.

That he attended to the construction of said bridges while in progress. Had a good opportunity of seeing them, and believes his admeasurement correct; that he made it without giving any notice to the plaintiff, and returned it to *Mr. Trimble*, the chief engineer of the company at the time, and when the admeasurement was made, and by whom it was delivered to the defendants. As to the admeasurement of work called for by the contract, that it is the same admeasurement now produced in evidence, nor was there any other admeasurement of the said bridges made after they were completed, by any of the servants of the company, so far as witness knows; that he saw *Mr. Trimble* twice on the 86th section, at the time when the mason's work was going on, which made the bailing of the

**66**  CASES IN THE COURT OF APPEALS

Wilson *vs.* York and Maryland Line Rail Road Company.—1839.

water necessary. That witness believes fifty dollars for water expenses on the 86th section to have been a sufficient compensation, and so informed *Mr. Trimble.* That witness was not always at the bridges on said sections. That as assistant engineer, he had various other works of a similar character to supervise, and other duties connected with the construction of the road to perform.

The defendants further offered in evidence an estimate of water expenses, amounting to $231.19.

And proved that it was in the hand-writing of, and signed by *Mr. Trimble,* then chief engineer at the time of making it under said contracts, which require that he should estimate the water expenses or expenses of bailing water; and further proved by *Mr. Trimble* that he could ascertain the cost thereof by observing the hands at work, by the quantity of water, the nature of the stream, and the character of the ground; that when the hands worked at night, he sometimes directed an account of the expenses to be kept. That with regard to the bailing in question, he had seen them while employed in it. That he was there several times when *Mr. Crain* was not present. That he saw two or three hands bailing. He cannot say how often he saw them at work. Did not direct that an account should be kept of the hands time. Cannot state how many hands were employed at work in bailing, now for how long a time. That he is satisfied he had all the data necessary to make a correct estimate, having had recourse to the assistant engineers for information, as well as made his own observations as stated. *Mr. Trimble* also stated, that he did not give any notice to the plaintiff before he made the said estimate, and that the same was not made in the presence of the plaintiff; that he was the engineer of the company, and had the general superintendance of the construction of the road, and of making the contracts, and adjusting the claims relative thereto, and that *Mr. Crain* was one of his and the company's assistant engineers. The defendants also offered in evidence an account presented to the company by the plaintiff, when he was endeavoring to procure a settlement of his claims against them.

Wilson vs. York and Maryland Line Rail Road Company.—1839.

*The Balt. and Sus. Rail Road Co.*

To *James S. Wilson* Dr.

*Water expenses of Bridge Pier, section 86—Fessel's Mill.*

| | | |
|---|---|---:|
| 1826—Nov.—To 30 days bailing at pier, at $1.25, | $37 | 50 |
| Dec.—To 32 days " at $1.25, | 40 | 00 |
| 1827—Jan.—To 50 days do. at abutment, 1.25, | 62 | 50 |
| To 17½ days do. " " | 21 | 87½ |
| To 7 days do. " " | 8 | 75 |
| Two pumps for pumping, - - - | 17 | 50 |
| Blacksmith's bill, - - - - | 5 | 25 |
| Extra digging at wing of abutment - | 10 | 00 |
| Removing Coffer dam, - - - | 25 | 00 |
| Bill of finances on sections 72 and 74, - | 191 | 50 |
| | 419 | 87½ |
| Bill for hewing timber, - - - - | 11 | 19 |
| | 431 | 06½ |

The following in the handwriting of *I. Trimble, Mr. Crain* and *Mr. Ewell,* believe $50 will cover water expenses at bridge near *Fessel's Mill,* exclusive of Coffer dam.

And also on notice given by plaintiff, a letter from plaintiff to the directors of the company.

BALTIMORE, JUNE 3RD, 1837.

*President and Directors of the Balt. & Sus. Rail Road Co.*

Gentlemen,—I appeal to you, please your honors, to take into consideration my case, as I have had a hard job, upon which I lost money. But notwithstanding, I pushed ahead and done the work to the satisfaction of the engineer, and in less than contract time. All I complain of is, that the water expenses were to have been paid, and now I am cut down, and owing to the hardness of the job, I am not able to stand it. I hope therefore it will please your honors to admit my bill. Mr. Trimble admits, that I ought to be paid eighty dollars for the Coffer dam of the pier, which is not in the bill. So please your honors, I submit it with your body.

Your obedient servant,

(Signed,)                    JAMES S. WILSON.

| | | |
|---|---|---|
| Bill of water expenses, - - - - | $419 | 87½ |
| Hewing timber, - - - - - - | 11 | 19 |
| | 431 | 06½ |
| Coffer dam pier, - - . - - - | 80 | 00 |
| | $511 | 06½ |

Whereupon the plaintiff prayed the court to instruct the jury—

1st. If the jury believe that *Mr. Trimble* was the engineer of the company at the time when the masonry of the bridges was completed under the contracts given in evidence, and that *Mr. Trimble* did not measure said bridges or either of them, but that the same were measured by *Crain,* assistant engineer, and that he returned the same to *Trimble,* as containing the number of perches of mason's work in said bridges, and that it is said, return which is now offered in evidence as the measurement of *Mr. Trimble,* then the same is not binding and conclusive upon the plaintiff, and the jury must allow to the plaintiff the number of perches which they may find from the evidence were contained in said bridges, unless they shall also find that the said measurement was returned by the said *Crain to Trimble,* the chief engineer of the defendants, and by him was adopted and delivered to the said defendants, under the contracts given in evidence by plaintiff as his own, and that in the making and adopting of the same as aforesaid, there was no fraud either on the part of the said assistant engineer or *Trimble,* or on the part of the defendants in this action.

2nd. If the jury believe from the evidence, that said admeasurement of masonry was made without previous notice thereof to the plaintiff, then the same is not conclusive upon him as evidence in this cause.

If the jury believe from the evidence, that no notice was given to the plaintiff previous to the said estimate of the water expenses, so that he might have an opportunity of making his representations and suggestions to the said engineer *Trimble,* then said estimate is not binding and conclusive upon him.

4th. If the jury believe, that the company had notice, and was present by its own proper officers at the time when the admeasurement of the masonry, and the estimate of the water expenses, which have been offered in evidence by the defendants, were made, and that it was the duty of said officer, in his character of agent of the company, to protect it from any unjust claim or demand made against it, and to investigate all facts, having a tendency to promote the interest of the company, in regard to such admeasurements of masonry and estimate of water expenses. And if the jury further believe, that the plaintiff had no notice when said admeasurements and estimate were to be made, and no opportunity of appearing before the persons appointed to make them, to speak for himself, and make such suggestions, arguments and proof as he might have to offer, in his own behalf, then said admeasurement and estimate being thus made in the presence of the company, and out of the presence and without notice to the defendants, he is not concluded by the same, and the jury are at liberty to allow to the plaintiff the number of perches which they may find from the evidence, were contained in said bridges, and also the true value of the water expenses.

6th. If the jury believe from the evidence, that the said estimate of water expenses are grossly inadequate, and that it was made under a gross mistake of the engineer, of the actual value of bailing, in consequence of his neglect to employ the usual and proper means of informing himself, as to said value, then said estimate is not conclusive upon the plaintiff in this action.

7th. If the jury believe from the evidence, that the water expenses were estimated by *Trimble*, upon the judgment of others, or that he had not an opportunity of exercising his own, upon the quality and value of the water expenses, or was grossly negligent of the employment of the means of information within his power, to ascertain the value of the said water expenses; then the said estimate is not conclusive, but the jury may allow for the same, as much as they were worth.

All which prayers the court (Purviance, A. J.,) refused to

grant, or any of them, but refused the whole, adding a modification to the 1st, 6th and 7th prayers, which modifications are as follows, to wit:

*Modification to first prayer.*—Unless they shall also find, that the said measurement was returned by the said *Crain* to *Mr. Trimble*, the chief engineer of the defendants, and by him was adopted, and delivered to the said defendants, under the contracts given in evidence, as his own, and that in the making and adopting of the same as aforesaid, there was no fraud either on the part of the said assistant engineer, or *Mr. Trimble*, or on the part of the defendants in this action.

*Modification to sixth and seventh prayers of Plaintiff.*—If the jury shall find from the evidence, that the engineer, *Mr. Trimble*, made a fair and *bona fide* estimate of the amount of the expense of bailing the water under the contracts, then the same is final and conclusive on the parties, although the jury should believe, that he formed an erroneous estimate of the real expense of said bailing, and that it actually cost the plaintiff a larger amount than is stated in his estimate.

1st. The defendants then prayed the court to instruct the jury, that under the written contracts given in evidence by the plaintiff, the measurement of the engineer for the time being, of all masonry done under it by the plaintiff for the defendant, as given in evidence by the defendant, is in the absence of fraud on the part of the defendants or their engineer, final and conclusive.

2nd. That under the written contracts given in evidence by the plaintiff, the estimate of the engineer of the defendants, as to the amount to be paid by the defendants to the plaintiff, for bailing out water as given in evidence by the defendants, in the absence of any fraud on the part of the engineer, or on the part of the said company, is final and conclusive as to the amount to be paid by the defendants to the plaintiff on that account.

The plaintiff then prayed the court to instruct the jury, as a modification of the defendant's *second* prayer, that gross negligence on the part of *Mr. Trimble*, would in contemplation of law, amount to fraud, or want of *bona fides*.

The court granted the defendant's two prayers, and refused the plaintiff's prayer of modification, adding the following qualification thereto.

If the jury should think, that there was gross negligence on the part of the engineer, in making the estimate of the water expenses under the contract, it is evidence, from which the jury may infer, that he did not act fairly and *bona fide* in making the said estimate.

The plaintiff excepted to the refusal of the court to grant his said several prayers, and to the modifications added to his said 1st, 6th and 7th prayers, and to the granting of the defendant's prayers, and to the refusal of the court to modify defendant's *second* prayer, and to the qualification of the plaintiff's prayer added by the court.

It was agreed that *Mr. Crain*, the assistant engineer to *Mr. Trimble*, and *Mr. Crittenden*, also an assistant engineer, were the persons appointed by the defendant to direct the construction of the bridges, the making of which was undertaken by the plaintiff, under his contracts aforesaid.

The verdict and judgment being for a less sum than the plaintiff claimed, he prosecuted the present appeal.

The cause came on to be argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY and CHAMBERS, J.

G. L. DULANY for the appellant, and
J. MASON CAMPBELL for the appellees.

STEPHEN J., delivered the opinion of the court.

This action was instituted in the court below, to recover compensation for work and labour, and services rendered by the appellant, in assisting to erect three bridges for the defendants. In the course of the trial, several prayers were made to the court by the plaintiff's counsel, for their instruction to the jury upon matters of law, all of which were refused by the court, accompanied however with modifications, in which they expressed their views of the law applicable to the several questions raised in said prayers.

It now becomes the duty of this court to say, whether in these opinions expressed by the court below, any error has been committed to the prejudice of the appellant, and for which he has a right to ask a reversal of their judgment. For the performance of the work to be done by the appellant, in assisting to erect the bridges upon the several sections mentioned and specified, special contracts were entered into, through the intervention of an agent, acting in behalf of the company on the one part, and the appellant on the other. In these contracts, after stipulating for the work to be done, and the prices to be paid therefor, there is to be found the following agreement in reference to the masonry work on said bridges. "The whole to be measured by said agent, or the engineer for the time being, whose measurement shall be final and conclusive." There is also annexed to the agreement the following stipulation. "It is hereby agreed and understood by the parties to this contract, that the foundation shall be prepared at the expense of the said *James S. Wilson,* the bailing of water excepted, which shall be paid for by said company, at the estimate of the engineer."

In the course of the trial it was proved to the jury, that the masonry work of the bridges was admeasured not by *Trimble,* principal engineer for the time being, but by a *Mr. Crain,* an assistant engineer of the company in the absence of *Mr. Trimble,* and without any notice to the plaintiff, and by him was delivered to *Trimble,* by whom it was delivered to the defendants, as the admeasurement of work called for by the contract. The defendants also gave in evidence an estimate of water expenses made by *Trimble,* the chief engineer, who proved that he made the same in the absence of the plaintiff, and without giving him notice, so that he might have attended if he had thought proper to do so. After the plaintiff had offered the evidence on his part, consisting of the special agreements relative to the execution of the work to be done by him, and fixing the rate of compensation to be paid for the same, and some other proof not material to be stated for the purposes of this opinion, he pray-

ed the court to instruct the jury, that if the jury believe, that *Mr. Trimble* was the engineer of the company, when the masonry of the bridges was completed under the contracts given in evidence, and that *Mr. Trimble* did not measure said bridges, or either of them, but that the same were measured by *Crain*, assistant engineer, and that he returned the same to *Trimble*, as containing the number of perches of mason's work in said bridges, and that it is said return which is now offered in evidence as the measurement of *Mr. Trimble*, then the same is not binding and conclusive upon the plaintiff, and the jury must allow to the plaintiff the number of perches which they may find from the evidence were contained in said bridges. This prayer was refused by the court, who added the following modification: "unless they shall also find, that the said measurement was returned by the said *Crain* to *Trimble*, the chief engineer of the defendants, and by him was adopted and delivered to the said defendants, under the contracts given in evidence by the plaintiff as his own, and that in the making and adopting the same as aforesaid, there was no fraud either on the part of the said assistant engineer, or *Mr. Trimble*, or on the part of the defendants in this action."

We think the court committed no error in rejecting this prayer of the plaintiff, because by the terms of the contract, a certain mode of ascertaining the number of perches contained in the mason's work, was fixed upon by the parties, as the rule of evidence, and the plaintiff had no right to resort to any other, until after proper exertions on his part, he had made an ineffectual attempt to procure it. It was his duty to have applied to the engineer to make the measurement, before any other evidence would have been admissible as a substitute for such proof. For this principle see 9 *Peters*, 327. But we think that there was error in the opinion of the court contained in their modification of the said prayer, because according to the true intent and meaning of the contract of the parties we think that to *Trimble*, or the chief engineer for the time being, was confided the right and duty, of making the measurement of the masonry work, and that by the express terms of the con-

tract, power was given to no other person for that purpose. In his skill and integrity, or the person who might succeed him in the responsible station which he occupied, full and implicit confidence might have been reposed, which the plaintiff at least might for valid reasons, be unwilling tor epose in a different and subordinate officer, and the execution of the trust by a different person, was an assumption of power, not warranted we think by the express terms of the contract.

That an agent has no power to delegate his authority to another, unless expressly authorised, see 2 *Kent's Com.*, where he says: "an agent ordinarily, and without express authority, has not power to employ a sub-agent to do the business, without the knowledge and consent of his principal. The maxim is, that *delegatus non potest delegare*, and the agency, is generally a personal trust and confidence, which cannot be delegated; for the principal employs the agent, from the opinion which he has of his personal skill and integrity, and the latter has no right to turn his principal over to another, of whom he knows nothing."

The plaintiff also prayed the court to instruct the jury, that if they believe from the evidence, that said admeasurement of masonry was made without previous notice thereof to the plaintiff, then the same is not conclusive upon him as evidence in this cause. This prayer we think was properly refused by the court, because in performing that duty, his judgment could not have been influenced or enlightened by the production of evidence on the part of the plaintiff, and the purposes of justice did not require that the plaintiff should have been present when that part of the trust confided to the engineer was executed.

The plaintiff further prayed the court to instruct the jury, that if they believed from the evidence, that no notice was given to the plaintiff previous to the said estimate of the water expenses, so that he might have an opportunity of making his representations and suggestions to the said engineer *Trimble*, then said estimate is not binding and conclusive upon him. In rejecting this prayer, we think the court below erred. If

notice had been given it is fair to presume, that evidence might have been adduced material to a right decision, as to the amount of compensation proper to be allowed to the plaintiff for his services in bailing the water under the contract made by him with the defendants. The amount of the expenses incurred by him in performing that operation it was reasonable and proper that he should have had an opportunity of submitting to the consideration of the engineer, together with such remarks and observations as he might have thought proper to make upon the subject. Such information, although not binding and obligatory upon him in making the estimate, might at least have had a beneficial tendency in guiding his judgment to a fair, just and accurate result. In coming to the conclusion we are happy to find, that we are sustained not only by what we deem the principles of right and justice, but by the authority of adjudged cases upon similar subjects. In the case of awards, it is an established rule that notice is necessary to be given to the parties, so that they may have an opportunity of adducing their proofs, before a decision is made upon the matters submitted, and although this may not be considered a case of that description, yet the reason of the rule would seem to be not inapplicable. That notice would be necessary in a case like the present, seems to have been the opinion of the court in 6 *Cowen*, 106. In that case, rent was due from a tenant to his landlord, and it was agreed, that a shearing machine should be taken in part payment of the rent, at a valuation or appraisement to be made by a certain individual appointed by the parties; the appraisement was made in the absence of the landlord, and without notice to him, and the court say, the appraisal was irregular, and not conclusive on the defendant. Both parties should have had notice, so that an opportunity might be afforded to submit their remarks to the appraiser, and adduce proof if deemed necessary. The plainest dictates of natural justice require, that no man should be condemned unheard. The right to notice was implied in the agreement to submit, and for want of notice the court held the appraisement a nullity. In 5 *Wend.* 521, this decision of

the court in 6 *Cowen* is adverted to, and the reasonableness and propriety of the necessity of notice is admitted as a general rule, sanctioned both by reason and good sense, if it was to be considered as an appraisement; and the court only decide, that the rule was improperly applied in that case, if it was to be considered as an award, which they thought it was not.   Speaking of the propriety of notice, the court say: "in the opinion delivered it was said, (though not necessary to the decision of the cause,) that the appraisement was void for want of notice to the person to be charged with it.   This proposition is certainly consonant to reason and good sense, and is well established as a principle of equity; as to the appraisement referred to in *Peters vs. Newkirk,* it could hardly be dignified with the name of an award.   Even if it should be so considered, it was not made the foundation of an action.   It seems to us however, there is an essential difference between an award upon matters in controversy between parties, and a bare appraisement of a chattel."

The plaintiff then prayed the court to instruct the jury, that if they believe the company had notice, and was present by its own proper officers at the time when the admeasurement of the masonry, and the estimate of the water expenses, which have been offered in evidence by the defendants, were made, and that it was the duty of said officer, in his character of agent of the company, to protect it from any unjust claim or demand made against it, and to investigate all facts having a tendency to promote the interests of the company in regard to such admeasurement of masonry, and estimate of water expenses, and if the jury further believe, that the plaintiff had no notice when said admeasurement and estimates were to be made, and no opportunity of appearing before the person appointed to make them, to speak for himself and make such suggestions, arguments and proofs as he might have to offer in his own behalf, then said admeasurement and estimate, being thus made in the presence of the company, and out of the presence and without notice to the plaintiff, he is not concluded by the same, and the jury are at liberty to allow to the plaintiff the

number of perches, which they may find from the evidence were contained in said bridges, and also the true value of the water expenses. We think the court below committed no error in rejecting this prayer, because it insists upon notice, both as to the admeasurement of the masonry, and the estimate of the water expenses, and requested the court to tell the jury, that they were at liberty, upon finding the facts therein stated to be true, to give their verdict upon other evidence than that which had been agreed upon by the parties, without any effort being made, or steps taken by the plaintiff, to procure the kind of proof which had been agreed upon by the contracts; all other evidence being inadmissible without an unavailing effort on the part of the plaintiff to procure the stipulated proof.

The plaintiff further prayed the court to instruct the jury, that if they believed from the evidence, that the said estimate of water expenses was grossly inadequate, and that it was made under a gross mistake of the engineer, of the actual value of the water bailing, in consequence of his neglect to employ the usual and proper means of informing himself as to said value, then said estimate is not conclusive upon the plaintiff in this action. This prayer also we think was properly rejected by the court, because it would not follow from the facts stated, that the estimate would not be binding, unless in making it, it was not done *bona fide*, and that was a fact which ought to have been submitted to the jury; for this principle see 15 *Wend.* 90, when the court say, that a valuation made by a person selected by the parties will be binding and conclusive, unless made *in bad faith*, and whether so made or not, was a fact which the jury alone were competent to find.

We think however that there was error in the modifications made by the court to to this prayer, when they say, if the jury shall find from the evidence, that the engineer *Mr. Trimble*, made a fair and *bona fide* estimate of the amount of expense of bailing the water under the contract; then the same is final and conclusive on the parties, although the jury should believe, that he formed an erroneous estimate of the real expense

of said bailing, and that it actually cost the plaintiff a larger amount than is stated in his estimate; we think the court erred in the instruction contained in this modification, because they say, that the estimate would be final and conclusive if made *bona fide,* although erroneous, and this although no notice was given to the plaintiff to enable him to be present when it was made, which notice we think he ought to have had.

The plaintiff further prayed the opinion of the court, and their instruction to the jury, that if they believed from the evidence, that the water expenses were estimated by *Trimble,* upon the judgment of others, or that he had not an opportunity of exercising his own upon the quantity or value of the water expenses, or was grossly negligent of the employment of the means of information within his power, to ascertain the value of said water expenses; then the said estimate is not conclusive, but the jury may allow for the same, as much as they were worth.  For the reasons already given, we think the court were right in rejecting this prayer, because the plaintiff asks the court to leave it to the jury to make the estimate upon other evidence than that stipulated by the parties, without his shewing that the proper evidence was not attainable, after he had used his proper and reasonable endeavors to procure the same without effect.  To this prayer the court made the same modification as that made to the sixth, which we think was erroneous; because they say the estimate made by *Trimble,* would be binding and conclusive upon the plaintiff, if made *bona fide,* although no notice had been given, which for the reasons already stated, we think he ought to have had before the estimate was made.

The defendants then prayed the court to instruct the jury, that under the written contracts given in evidence by the plaintiff, the measurement of the engineer for the time being, of all masonry done under them by the plaintiff for the defendant, as given in evidence by the defendant, is in the absence of fraud on the part of the engineer, or on the part of the defendants, final and conclusive.  *Secondly,* that under the written contracts given in evidence by the plaintiff, the

estimate of the engineer of the defendants, as to the amount to be paid by the defendants to the plaintiff for bailing of water, as given in evidence by the defendants, in the absence of any fraud on his part, or on the part of the said company, is final and conclusive, as to the amount to be paid by the defendants to the plaintiff on that account.

The plaintiff then prayed the court to instruct the jury, as a modification of the defendants' *second* prayer, that gross negligence on the part of *Mr. Trimble*, would in contemplation of law, amount to fraud, or want of *bona fides*. The court granted the defendants two prayers, and refused the plaintiff's prayer of modification, adding a qualification thereto, which is as follows, to wit: "if the jury should think, that there was gross negligence on the part of the engineer, in making the estimate of the water expenses under the contracts, it is evidence from which the jury may infer, that he did not act fairly and *bona fide* in making the said estimate."

We think the court erred in granting the prayers made by the defendants, because in the first, the measurement of the masonry according to the evidence, was not made by *Trimble*, which according to the true construction of the contract ought to have been made by him, and yet the court say, that in the absence of fraud the same would be final and conclusive; and in the *second* there was error, because the court say, that in the absence of fraud, the estimate of the water expenses made by the engineer, would be final and conclusive, although no notice was given to the plaintiff before the same was made. But we think the court were right in rejecting the plaintiff's prayer of modification of the defendant's *second* prayer, and were right in their qualification of the same, because we do not think, that gross negligence would in construction of law amount to fraud, but was only evidence to be left to the jury, from which they might infer fraud, or the want of *bona fides* in the making of said estimate.

In 1 *Liver on Prin. and Agent*, 342, a case is referred to, where an action was brought against the defendant, for not insuring according to orders, and *L. Mansfield*, in delivering

the opinion of the court said, to maintain this action, the defendant must be guilty either of a breach of orders, gross negligence or fraud, treating them as distinct grounds of action, and not as importing in point of law the same thing.   We think that the judgment of the court below must be reversed, and a procedendo ordered.

JUDGMENT REVERSED.