(Decided 20th June, 1883.)

---

John G. Lynn, Jr. *vs.* Baltimore and Ohio Railroad Company.

*Contract for the delivery of Ice subject to Approval of an Agent of the Purchaser—Effect of Fraudulent rejection by the Agent—Finality of his action in the Absence of Fraud— What will constitute a Fraudulent intent in such cases.*

Under a contract between L. and a railroad company, L. agreed to furnish the company a certain quantity of ice, of a given descrip-

tion, the same to be subject to the inspection and *approval* of an *agent* of the company. In an action by L. against the company to recover damages for a breach of the contract, it was HELD:

1st. That if the agent rejected the ice fraudulently, or in bad faith, the defendant was responsible for his act.

2nd. But that under the contract, which was perfectly lawful, the judgment of the agent, no matter how erroneous or mistaken it might be, or how unreasonable it might appear to others, was conclusive between the parties, unless tainted with fraud or bad faith.

A prayer offered by the defendant instructed the jury that it was incumbent on the plaintiff to establish his charge of fraud by clear and satisfactory evidence that the agent disapproved of ice submitted to him, "*either* by the procurement of, and in collusion with, the defendant, *or* from a design to injure, deceive or defraud *the plaintiff*," HELD:

That this prayer was erroneous, and inevitably tended to mislead the jury, for the reason, that if intent was necessary to constitute the fraud, an intent to advance some interest of his own, or to benefit the *company* of which he was agent, or any other motive on his part, would answer just as well, as a design to injure, deceive or defraud the plaintiff.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the three following prayers:

1. That if the jury find the contract offered in evidence was made by the parties to this cause, and that N. S. Hill appointed Mr. Legge to inspect the ice offered by the plaintiff, and said Legge thereafter left Cumberland and appointed Mr. Wilson to inspect samples offered by the plaintiff in his absence and send the same to Mr. Hill in Baltimore—then, that the decision of Wilson and Hill, or either of them, is not binding on the plaintiff, unless they shall find that such authority was delegated by Legge to Wilson or Hill with plaintiff's consent, and if they find

that the samples offered in the absence of Mr. Legge, were of the quality specified in the contract, and plaintiff was ready and willing to deliver the quantity and quality of ice in said contract specified, in the manner thereby required, and defendant refused to receive and pay for the same, then their verdict must be for the plaintiff.

2. That if the jury find the facts set forth in the first prayer, their verdict must be for the plaintiff, and the measure of damages is the difference between the contract price and the sum which it would cost the plaintiff to deliver said ice as in said contract is specified, together with such sums as the plaintiff may have reasonably laid out and expended in part execution of his contract.

3. That if the jury find that the parties entered into the contract offered in evidence, and plaintiff was ready and willing and offered to deliver the quantity and quality of ice in said contract specified, in the manner therein provided for, and N. S. Hill appointed J. F. Legge to inspect the same, and said Legge inspected and condemned the same, but was grossly wrong in his judgment, and was an employé of the defendant, and told the plaintiff, as a reason for not taking his ice, that the defendant could get cheaper ice elsewhere, and concealed from the plaintiff that he was acting under the said appointment of said Hill, and told plaintiff that he was not so acting, then the decision of said Legge as to the quality of said ice is not binding on plaintiff, and their verdict must be for the plaintiff.

And the defendant offered the five following prayers:

1. That if the jury find that in pursuance of the contract in evidence the said N. S. Hill selected John F. Legge, an agent of the defendant, to inspect and approve the ice offered by the plaintiff, and that said Legge accepted the duty and undertook its performance, and that he (plaintiff) submitted specimens of ice from time to time to the inspection of Legge, then in order to recover

under the pleadings in this case it is incumbent on the plaintiff to prove that the said Legge did approve of ice so submitted for his inspection and approval, unless the jury further find that Legge fraudulently, or in bad faith, rejected the ice offered by the plaintiff.

2. And on the subject of a fraudulent rejection, or bad faith, as mentioned in the aforegoing prayer:

(*a.*) That the onus of establishing fraud is on the plaintiff, and the presumption is always against fraud.

(*b.*) That fraud is not to be assumed on doubtful evidence, but the facts constituting fraud, must be clearly and satisfactorily established.

3. That it is not enough to establish fraud, that the evidence tends to show, that Legge rejected ice, which, in the opinion of the jury, he ought to have approved of; but it is incumbent on the plaintiff to establish his charge of fraud, by clear and satisfactory evidence, that Legge disapproved of ice submitted to him, either by the procurement of, and in collusion with, the defendant, or from a design to injure, deceive or defraud the plaintiff.

4. That according to the terms of the contract between the plaintiff and defendant, read in evidence, it was the duty of the said N. S. Hill to have appointed some agent of the company, (defendant,) to inspect and approve of the ice to be furnished by the plaintiff; and if the jury find that John F. Legge was selected and appointed by N. S. Hill to perform that duty, and that Legge was an agent of the defendant, and that Legge accepted the appointment, and undertook the duty assigned him, and that the plaintiff accordingly, from time to time, submitted to Legge specimens of ice for his inspection and approval ; and further find, that he did inspect the ice offered by the plaintiff, for the acceptance of the defendant; but that he did not approve of such ice, and rejected it; then, even though the jury may believe from the evidence that Legge unreasonably rejected the ice, the plaintiff cannot recover

in this action unless the jury find that the action of Legge in rejecting the ice offered was fraudulent or done in bad faith.

5. But in order to find that Legge was guilty of fraud, or bad faith, in rejecting the ice as mentioned in the foregoing prayer, it is incumbent on the plaintiff to establish the charge of fraud, and by clear and satisfactory evidence; and it is not enough to establish the fraud charged, that the jury may believe, from the evidence, that Legge rejected ice which the jury may believe he ought to have accepted, or that he rejected ice which, in the opinion of the jury or others, corresponded in all particulars with that described in the agreement; but in order to maintain the charge of fraud under the pleadings and evidence in this case, the jury must find that the judgment and action of Legge was the result of fraud or bad faith, as described in preceding prayers.

The Court, (ALVEY, C. J., and MOTTER, J.,) rejected the prayers of the plaintiff, and granted those of the defendant, and gave the following instruction in lieu of the plaintiff's second prayer:

If the jury find for the plaintiff under the instructions given by the Court, then the measure of damages will be the amount of expense or outlay by the defendant reasonably and fairly incurred by him in part execution of the contract, if the jury so find, not exceeding the contract price of the ice to be furnished, and any profit that he would have made or realized if the contract had been fully performed by him.

The plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was orally argued before MILLER, YELLOTT, ROBINSON, and IRVING, J., and upon re-argument on brief, on the appellee's third prayer, STONE, J., participated in the decision.

*J. W. Thomas,* and *William Walsh,* for the appellant.

*W. Irvine Cross, A. Hunter Boyd,* and *John K. Cowen,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This action was brought by the appellant against the appellee, to recover damages for breach of a written agreement by which the plaintiff engaged to furnish a certain quantity of ice to the defendant for the use of its road generally, and for its hotel in Cumberland. The contract is embodied in a letter from N. S. Hill, the general purchasing agent of the company, to the plaintiff, dated the 7th of December, 1880, which contains this provision: "The ice to be good, clear, solid stock, not less than six inches thick, clear of snow, and subject to the inspection and *approval* of an *agent* of the company selected by me." In pursuance of this contract, Hill appointed J. F. Legge, the station agent of the company in Cumberland, to inspect and approve the ice, and the plaintiff, at sundry times after the ice season commenced, sent specimens of the ice he proposed to furnish, to Legge, who rejected the same, and no ice was ever, in fact, delivered. In his amended declaration, the plaintiff, after setting out the contract avers that, relying upon the same, he made all necessary arrangements for full and complete performance thereof, in the way of leasing land to work upon, and purchasing tools, which involved the expenditure of a large sum of money, and that at the first favorable ice season, which was sometime in December, and from time to time thereafter, he requested the defendant to allow him to proceed to furnish and deliver the ice as he had contracted to do, and submitted samples of the ice to be inspected by the agent appointed by Hill, but said agent *fraudulently rejected the same;* that he was willing and ready, and offered to perform his said contract in each and every par-

ticular, and was fully prepared and able so to do, but the defendant wholly neglected and refused to allow him to perform the same, or to accept the ice it had agreed to accept, and which the plaintiff had agreed and was willing and ready to deliver as he had contracted to do.

It appears that besides the general issue, the defendant filed a number of special pleas to the *original* declaration, and that to several of these demurrers were interposed, some of which were sustained, and that the pleas thus overruled were allowed to be amended, but it does *not* appear that any amended pleas were ever filed. It also appears that demurrers were sustained to several *replications* to the original pleas, but as no amended pleas were filed, the rulings upon none of these demurrers are presented for review. In fact the record, upon this point, is very confused, and as counsel are unable or unwilling, to enter into an agreement setting forth what ought to be its true state, in this respect, we must take it as it stands, and, in the absence of the amended pleas, we assume (as counsel for the appellee have stated) that after the amended declaration was filed, charging that Legge fraudulently rejected the ice, there were no demurrers, and consequently no rulings upon them. The apparent *inconsistency* therefore between the ruling sustaining the demurrer to the replication to the second plea, (the effect of which was to decide that the fact that Legge did not, in good faith, inspect the ice, but fraudulently rejected the same, would not entitle the plaintiff to recover,) and the instructions given by the Court to the jury upon the same subject, in the only exception taken at the trial, does not in fact exist, and therefore affords no ground for reversing the judgment rendered upon the verdict in favor of the defendant. It is manifest the case was tried upon the assumption that fraud upon the part of Legge in rejecting the ice offered by the plaintiff, if found by the jury, would enable him to recover in the action. But before

Lynn *vs.* Balto. & Ohio R. R. Co.

considering whether there is any error in the instructions to the jury upon this subject, we propose to state the general principles of law, which, in our opinion, govern the case.

Inspection and *approval* by the agent appointed for that purpose, is, in this contract, a condition precedent. This is so plainly apparent from the face of the contract itself, that no authorities to sustain the position need be cited. If, therefore, ice had been actually furnished and delivered, it would have been incumbent upon the plaintiff to prove that it had been thus inspected and approved, or to show some legal excuse therefor, before he could recover the stipulated price. So, if he seeks to recover damages for a breach of the contract, and founds his right upon the fact of a refusal by the agent to approve, he must show that the contract was, *in law*, broken by such refusal; in other words, that compliance by him with this condition had been unlawfully prevented. There are several modes in which the performance of a condition precedent may be dispensed with which the case does not require us to notice. If Legge's refusal to approve was brought about at the instigation, or by the procurement, of the defendant company, this would undoubtedly have dispensed with the condition and allowed a recovery; but it is conceded no such state of facts exists, and the plaintiff's counsel admit they can furnish no proof that this refusal was procured by the company through any action of its directors, or by any order or direction of any of its superior officers, or that there was any collusion between them and Legge to have the contract broken up and the plaintiff deprived of its benefit. It is averred, however, that Legge fraudulently rejected the ice submitted to him for inspection, and it is insisted that such fraudulent conduct on his part alone renders the company liable. This proposition was, to some extent, the subject of controversy in argument, and a large number of cases, having a bearing more or

less direct upon the question, have been cited by counsel on either side. We do not propose to review these authorities at length, and shall refer to but very few of them. In some of them the contracts are altogether unlike the one now before us, and in many others the analogy is very remote. In the present case the party to inspect and approve was in fact, and by the agreement was required to be, *an agent of the company*, and his sole duty was to determine whether the ice which the plaintiff proposed to deliver, corresponded in size and *quality* with the specifications contained in the contract. We are all of opinion that if a jury, upon sufficient evidence, should find that this agent rendered a fraudulent judgment, or, what is the same thing, rejected the ice in bad faith, the company would be responsible; and this position is supported by the weight and current of authority.

In the case of the *Balt. & Ohio R. R. Co. vs. Polly, Woods & Co.,* 14 *Gratt.,* 447, the decisions upon this subject are reviewed in a very able opinion delivered by MONCURE, J. In that case suit was brought by a contractor under a construction contract which contained the usual clause, to the effect that the final estimate of the company's engineer, as to the quantity, character, and value of the work done, shall be conclusive between the parties, and the Court said: "By the express contract of the parties the final estimate of the defendant's engineer is made the condition precedent of the defendant's obligation to pay for the work; and there is nothing unlawful in the contract. But, while the defendant is bound only to pay the amount of the final estimate of its own engineer, that estimate must be valid in equity as well as at law. If it be a fraudulent estimate, the defendant cannot take advantage of it. To do so would be, in a manner, taking advantage of the defendant's own wrong. A principal cannot take advantage of the fraud of his agent, even though he did not actually participate in the perpetration

of the fraud." The doctrine that fraud in the engineer in making such estimates will vitiate them, and allow the contractor to recover against the defendant company, upon other proof of the quantity and value of the work done, was conceded by this Court in the cases of *Wilson vs. York and Maryland Line Railroad Company,* 11 *G. & J.,* 58, and *Balt. & Ohio R. R. Co. vs. Resley,* 7 *Md.,* 297; and, in fact, seems to have been recognized as well settled law in all the adjudications in which the question has arisen.

The inquiry then is, is there any error in the instructions given to the jury upon this subject by granting the defendant's first, second, third, fourth, and fifth prayers?

The substance of the first instruction is that it was incumbent on the plaintiff to prove that Legge did approve of the ice submitted for his inspection and approval, unless the jury find that he rejected it *fraudulently* or in *bad faith.* If we are right in the construction of the contract, and in the views already stated as to the law governing the case, there can be no possible objection to this instruction.

The jury were then told by the second instruction that the *onus* of establishing the fraud or bad faith mentioned in the preceding prayer, is on the plaintiff; that the presumption is always against fraud, and that it is not to be assumed on doubtful evidence, but the facts constituting it must be clearly and satisfactorily established. This is simply the statement of an elementary principle everywhere conceded, and recognized in all the authorities. There was clearly no error in announcing it to the jury in this case, and, indeed, no objection was made to it by the appellant's counsel in their arguments.

By granting the *fourth* prayer, the jury were instructed that it was not sufficient for them to believe, from the evidence, that Legge *unreasonably* rejected the ice, *unless* they find that his action in this respect was fraudulent or

done in bad faith; and by the *fifth* instruction they were
told that it is not enough to establish the fraud charged;
that they may believe, from the evidence, that Legge
rejected ice which *they* may believe he *ought* to have ac-
cepted, or that he rejected ice which, in their opinion or
that of others, corresponded in all particulars with that
described in the agreement; but in order to maintain the
charge of fraud under the pleadings and evidence in this
case, they must find that his judgment and action was the ·
result of fraud or bad faith, as described in the preceding
prayers.   While, as we have already said, the condition
precedent in this contract will be dispensed with by prov-
ing that the judgment of the agent to whom the parties
entrusted the duty of inspection and approval was the re-
sult of his fraud or *mala fides,* it is plain that nothing less
will suffice.   This is well illustrated by the case of *Clarke
vs. Watson,* 18 *Com. Bench N. S.,* 278.   In that case there
was an agreement by which the plaintiffs contracted to do
certain works according to certain plans and specifications,
and were to be paid for the same upon the production of
the certificate of the defendants' surveyor that the con-
tractors have duly and efficiently performed and com-·
pleted the work *to his satisfaction.*   The declaration, to
which there was a demurrer, averred that the plaintiffs
had done all things under the contract necessary to entitle
them to have this certificate of the surveyor, but he had
"wrongfully and improperly neglected and refused" to
give the same.   The Court held that this was not suffi-
cient.   ERLE, C. J., said: "If it had been alleged that
the defendants wrongfully colluded with the surveyor to
cause the certificate to be withheld, they could not have
sheltered themselves by their own wrongful act.   But the
word 'wrongfully,' as used here, does not intimate any-
thing of that sort.   If the plaintiffs had intended to rely
on the withholding of the certificate as a wrongful act on
the part of the defendants, they should have stated how

it was wrongful. This is, in effect, an attempt on the part of the plaintiffs to take from the defendants the protection of their surveyor, and to substitute for it the opinion of a jury. That is not the contract the defendants have entered into. The allegations on the part of the plaintiffs are not, in my judgment, such as to entitle them to succeed." WILLES, J., was of the same opinion, and said: " Consistently with the allegations of this declaration the only wrong the surveyor has been guilty of may be an *error of judgment;* or he may have refused to exercise any judgment, in which case the proper course would have been to call upon the defendants · to appoint some other surveyor who will do his duty." Again, in the case already referred to in 11 *G. & J.*, 58, this Court held that a prayer that *gross negligence* on the part of the engineer in making the estimate, would, in contemplation of law, amount to fraud or want of *bona fides*, was properly rejected, because such negligence does not, in construction of law, amount to fraud, but is only *evidence* to be left to the jury, from which they might *infer* fraud or want of good faith. So, in the case before us, it was not enough that the jury might *believe* from the evidence that Legge *unreasonably* rejected the ice, or that he was *grossly wrong* in his judgment as stated in the plaintiff's third prayer; they must go further, and actually *infer* and *find* fraud or bad faith. By this contract, which is perfectly lawful, the parties expressly agreed to submit the question whether the ice to be supplied was " good, clear, and solid," to the judgment of this third party, and his judgment, no matter how erroneous or mistaken it may be, or how unreasonable it may appear to others, is conclusive between the parties, unless it be tainted with fraud or bad faith. To substitute for it the opinions and judgments of other persons, whether judge, jury or witnesses, would be to annul the contract, and make another in its place.

There is therefore no error in either the fourth or fifth instruction, unless it be in the reference which the fifth

makes to fraud or bad faith "as described in the preceding prayers," which includes, of course, the *third;* and that brings us to the consideration of this third instruction, which is as follows: "That it is not enough to establish fraud that the evidence tends to show, that Legge rejected ice, which in the opinion of the jury, he ought to have approved of, but it is incumbent on the plaintiff to establish his charge of fraud, by clear and satisfactory evidence, that Legge disapproved of ice submitted to him, *either* by the procurement of, and in collusion with, the defendant, *or* from a design to injure, deceive or defraud the plaintiff."

The first portion of this instruction is covered by the views we have already expressed. Objection has been taken by the plaintiff's counsel, to the second clause, upon the ground that there is no evidence of the "procurement" and "collusion" referred to. This, however, is a question which cannot arise in this Court, it not appearing from the record that any such point was made to and decided by the Court below. *Rule* 4 in 29 *Md.*, 2. But assuming there was no such evidence, we are unable to perceive how this part of the instruction was in any way prejudicial to the plaintiff. It allows a verdict in *his favor*, if the jury found the disapproval to have been brought about "by the procurement of, and in collusion with, the defendant." And if there was no evidence to warrant the jury in so finding, clearly that is an error to the prejudice of the *defendant* and not of the plaintiff. But it is against the concluding clause of this instruction that the most earnest and serious criticisms of counsel have been directed, and it is obvious that affirmance or reversal of the judgment depends upon the question whether in this part of the prayer any substantial or fatal error is to be found. The argument, in brief, is that, by it, the jury were instructed that to constitute a fraud they must find that Legge disapproved the ice "from a design to injure, deceive or defraud the plaintiff," and that this gives too narrow a definition of fraud; that it

makes no difference from what *motive* he may have acted provided the *effect* of his fraudulent conduct was to injure the plaintiff; that if intent was necessary to constitute the fraud, an intent to advance some interest of his own, or to benefit the company of which he was agent, or any other motive, would answer just as well, whereas this clause excludes all possibility of fraud, unless it arose from the particular design there specified; and that the instruction therefore was not only erroneous, but inevitably tended to mislead the jury. There is apparently great force in this argument, and, at first, we were inclined to the opinion it was unanswerable, and that the judgment must be reversed, but upon careful consideration of the question we have reached a different conclusion. The clause in controversy must be considered in connection with the other instructions upon the same subject, and we must determine whether upon the whole the law was correctly announced to the jury, in view of the character of the action, the conceded facts of the case, and the presumption that the jury was composed of men of ordinary intelligence. Courts ought not to give mere legal abstractions as instructions to juries, but should state the law applicable to the pleadings and facts of each case. In the present case, Legge acted under a contract by which both parties agreed that he should decide whether the ice came up to the requirements which that contract prescribed. When he accepted the appointment it became his plain duty to act honestly, and impartially. An honest judgment from him is what both parties contracted for, and what he was bound to render. Now the fraud complained of necessarily consisted in a fraudulent judgment upon the question submitted to his determination, and upon the assumption that it was committed, he must have decided against the plaintiff, by rejecting ice which in his conscience and honest judgment he knew it was his duty to approve. In other words he must have told the plaintiff a wilful and deliberate lie, and

it is quite impossible he could have done this without having a *design*, at least, to *deceive*, if not to injure or defraud him. Such a judgment, so far as the question in controversy is concerned, differs in no respect from the fraudulent judgment of a Judge whose duty it is to decide cases honestly and fairly. If a Judge, in a given case, renders a fraudulent judgment in favor of one party to a suit, and against the other, he cannot do so without the *design* to injure, or to deceive, or to defraud the latter, though he may also have, at the same time, an *intention* to benefit the former, or to promote some interest of his own. If therefore the jury had found that Legge's decision was, from any cause or motive whatever, in point of fact dishonest and fraudulent, they would not only have been justified, but it would have been their duty to find that in so acting he had, in the words of this instruction, "a design to injure, deceive, or defraud the plaintiff." Indeed, taking all the instructions together, it appears to us that the question of fraud was fairly submitted to the jury. In short, we think that under these instructions they could not have rendered a verdict for the defendant if they were satisfied, from the evidence before them, that Legge's conduct and judgment in the premises were in any manner, or in any way, tainted with fraud or bad faith.

No objection has been made in argument to the rulings upon the other prayers contained in the exception, and it is sufficient so say we discover no error therein.

The four Judges before whom the case was argued orally, all concurred in the views expressed in the aforegoing opinion, except as to the propriety of granting this third prayer of the defendant, and upon that question they were equally divided. The necessary result was the ordering of a re-argument on this point. Upon the re-argument another Judge has participated in the decision, and a majority of the Court thus constituted are of opinion

there was error in granting this instruction for the reasons stated by counsel for the appellant, as set out in this opinion, and the result is that the judgment must be reversed, and a new trial awarded.

*Judgment reversed, and*

*new trial awarded.*

(Decided 21st June, 1883.)