FRANKFORT DISTILLERIES, INC., *v.* BURNS
BOTTLING MACHINE WORKS, INC.

[No. 8, January Term, 1938.]

14

*Decided March 7th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William D. Macmillan* and *Jesse A. Rose,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellant.

*G. C. A. Anderson,* with whom was *Paul M. Higin-bothom* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The Burns Bottling Machine Company was engaged in the manufacture and sale of machines to put labels on bottles. The company made a machine called the "Powell Labeling Machine," after its designer. One of these machines was in operation by the Frankfort Distilleries, Incorporated, and placed the metal labels on the front of the styles and sizes of bottles which were used in the business. The machines were built in adjustment with the particular bottles and labels to be used, and were not otherwise salable. The Frankfort Distilleries desiring a similar machine which would, in a single operation, simultaneously place a metal label on the front and a paper label on the back of every bottle, the manufacturer agreed to make, and the distilleries agreed to buy, one Powell Labeling Machine for $4,500, to be paid thirty days after its acceptance. The additional terms of the contract were that the machine was: "To apply front and back labels on Four Roses and Antique ½ pints, pints and quarts, similar to machine now installed at Boyer Warehouse. To be equipped with 220 Volt, 60 cycle, 3 phase, splash proof motor. The above machine subject to acceptance and approval of Mr. S. C. Miller."

The plaintiff offered evidence tending to prove that the machine was built conformably to the specifications of the contract and was delivered and set up in March, 1935. There was further proof that it worked satisfactorily in labeling empty bottles, as was contemplated when the order was given, and that S. C. Miller, the president of the buyer, never formally approved and accepted the machine, and declined personally to inspect the machine and to observe it in operation. The buyer, however, used it to label filled bottles and, so, some adjustments and added equipment for this purpose were made, and there is testimony that the machine as thus operated worked efficiently. It was not until after a demonstra-

tion with filled bottles in May, 1936, that the buyer finally decided not to keep the machine. After this test, the machine was hauled by the buyer to the factory of the seller, which declined to accept its return.

The testimony on the part of the plaintiff is largely denied. The witnesses offered by the defendant tended to show that the machine in controversy was delivered in March, 1935, and proved unsatisfactory in a brief test with filled bottles, and was immediately returned to the maker for alterations. After remaining in the shop of the seller for improvement, it was returned to the buyer by the seller during the last part of August or the first part of September, and again put in operation to determine if it would simultaneously put a metal label on the front, and a paper label on the back of filled bottles. There is further testimony tending to show that neither in these trials, nor in subsequent use and tests after corrective alterations had been undertaken by the seller, did the machine simultaneously label the filled bottles with a metal label on the front and a paper label on the back in a manner satisfactory to officials of the buyer, who had been delegated by it and S. C. Miller, its president, to conduct the tests and observe its results. The final test was conducted on May 14th, 1936, and the following day the buyer rejected the machine and attempted to return it to the seller.

S. C. Miller testified that he was not present at any of the times the machine was used or tested, and that his action in the matter was based on the reports of his subordinates. There is much conflicting testimony, and contradictions will be found even among the witnesses who respectively testified on the part of the plaintiff and of the defendant. These differences of fact ultimately present questions for the determination of the jury on proper instructions with reference to the legal rights of the parties as they exist accordingly as the jury may find the issues of fact.

It is not controverted that the contract was a conditional one. So, the delivery of a machine in accordance

with the stipulations of the contract was not sufficient to bind the buyer unless it was accepted and approved by S. C. Miller. The mode of this acceptance and approval was not specified, so it might be made in any manner which would be sufficient in law. Again, the acceptance and approval did not contemplate nor involve a promise on the part of S. C. Miller, and, therefore, it was not necessary that the acceptance and approval of Miller be communicated to the seller before the condition would be fulfilled. *New v. Germania Fire Ins. Co.,* 171 Ind. 33, 39, 41, 85 N. E. 703. However, the decision of Miller, who was the president of the buyer, whether or not he would accept and approve the machine, must be held to have been intended to be made within a reasonable time. Furthermore, the machine had to be designed and built with reference to the particular labeling service which it was to perform in the business of the buyer at whose establishment the machine was to be delivered and operated. In order, therefore, for the arbiter to determine whether or not the machine possessed the operative fitness and mechanical utility to be accepted and approved by him, it was necessary that he not only inspect the machine but also observe it while working, and see the results obtained by its operation. So much is reasonably necessary and consequently required by good faith. In the selection of a third party, who is here the chief executive officer of the buyer, the contracting parties contemplated that this third party should act according to his own individual judgment on such facts in relation to the machine and its operation and capacity as are within his own powers of observation and comprehension. In the formation of his conclusion, the arbiter may inform his judgment from every available source, but, in respect of those matters which are ascertainable by his own inspection and open to his own observation, he is generally bound to make such personal inspection and observation. An arbiter, no more than an agent, may delegate to another the duty which he is chosen to discharge. If such were not the rule, the

judgment exercised would not be that of the arbiter, but of a stranger, who was not within the contemplation of the parties to the contract. *Mechem on Agency* (2nd Ed.), secs. 305-310; *Wilson v. York & Maryland Line R. Co.*, 11 G. & J. 58; *Lynn v. Balto. & O. R. Co.*, 60 Md. 404, 415; *Pope v. King*, 108 Md. 37, 44-47, 69 A. 417; *City of Baltimore v. Ault*, 126 Md. 402, 427-429, 94 A. 1044.

Here. the matter involved is not one of taste or fancy but the efficiency, capacity and fitness of a specially built piece of machinery that is designed to operate similarly to a machine formerly built by the seller for the buyer, and to accomplish a specific purpose. The only limitation upon the arbiter is that he fairly and honestly test the machine and its output, and express his judgment in good faith. *Lynn v. Balto. & O. R. Co.*, 60 Md. 404; *Balto. & O. R. Co. v. Brydon*, 65 Md. 208, 219-222, 611, 3 A. 306, 9 A. 126; *Canton Lumber Co. v. Liller*, 107 Md. 146, 172-177, 68 A. 500; *Hughes v. Model Stoker Co.*, 124 Md. 283, 289-291, 92 A. 845; *Devoine Co. v. International Co.*, 151 Md. 690, 693-697, 136 A. 37.

In the decisions cited, the condition upon which the sale of the material (ice, coal, lumber or imported preserved cherries) or the structure or apparatus (furnace) depended was that it would be found and accepted as satisfactory either by the buyer, an agent of the buyer, or a third party. In all these instances, the disapproval was after an examination or inspection of the goods and chattels sold. If such had not been the case, it could not have been contended that a vital term of the contracts had been performed as contemplated. Furthermore, if the arbiter designated had refused to approve the quality or utility of the subjects of the contracts without having himself made an examination, inspection, or observation of their quality and utility, but had depended upon the opinion of others in matters which were within his own competency and opportunities, it could not be well denied that he had acted arbitrarily and capriciously, and hence, in bad faith. In the appeal of *Aetna Indemnity Co. v.*

*George A. Fuller Company,* 111 Md. 321, 73 A. 738, 74 A. 369, the certificate furnished by the architects was not based upon a personal examination and inspection of the work done, and it was held properly excluded. The court said in the course of its opinion: "We are not to be understood as charging these architects with actual fraud, or with any fraudulent purpose; but it was their duty to make such a personal examination of the work done in completing the contract as would have enabled them to give a proper certificate, such as would have been admitted in evidence, and when they neglected that duty it operated as injuriously upon the rights of the plaintiff as an absolute refusal in bad faith to give any certificate whatever." At page 344 of 111 Md., 73 A. 738, 745, 74 A. 369.

As was stated in *City of Baltimore v. Ault,* 126 Md. 402, 429, at pages 434, 435, 94 A. 1044, 1052: "To constitute bad faith it is not necessary, however, that the decision of the person to whose judgment the matter is submitted shall be the result of a malicious and deliberate purpose to defraud or deprive a party to the agreement of the benefit of the contract. The agreement in this case was to submit the matters within the terms of the submission to the decision of the Harbor Engineer, and not to the judgment of any other person. His honest decision, however erroneous, would be binding upon the parties, because the contract makes it so, but nothing short of that would gratify the terms of the agreement, and any decision which was not his judgment, but the mere expression of the views, or the influence, whether intentionally or innocently exercised, of others, would be outside of the contract and without force." See *Canton Lumber Co. v. Liller,* 107 Md. 146, 176, 177, 68 A. 500.

So, either the refusal of the arbiter to act, or his failure to act in good faith, does not terminate the contract, but leaves it, to the extent that it is executory, to be performed or enforced, with the condition eliminated. *Supra;* and *Wilson v. York & Maryland Line R. Co.,* 11 G. & J. 58; *Filston Farm Co. v. Henderson & Co.,* 106 Md. 335,

367-372, 67 A. 228; *Shirk v. Lingeman,* 26 Ind. App. 630, 59 N. E. 941; *Potter v. Holmes,* 72 Minn. 153, 75 N. W. 591, 593, 594; *School Dist. v. Sidney School-Furniture Co.,* 130 Pa. 76, 93, 18 A. 604, 606; *Doran, Brouse & Price v. Henry Cowell Lime & Cement Co.,* 37 Cal. App. 478, 174 P. 90, 91.

The contract at bar contained certain definite tests and specifications. It was to be a labeling machine of a named type, which was to perform a specific task on three sizes of bottles in a manner similar to the work done by a machine of the same make then installed in the buyer's warehouse; and the motor equipment was particularly prescribed. This machine, when manufactured, was "subject to · acceptance and approval of" a named person, who was the president of the corporate buyer. So, the standard of performance exacted was a fulfilment of these specifications as to design and capacity, and the mere approval and acceptance of the arbiter were not the exclusive factors contemplated in the decision of the arbiter. Again, the machine was manufactured for a special and sole use in the buyer's business, and, unless paid for, its value will be lost to its maker, either wholly or in great part, and it is generally agreed that the refusal to approve and accept must at least be an honest and real determination, so that if the arbiter refuse, as here, to make a personal examination and observation of the machine and its operation in order to decide if he should approve or disapprove it, the seller may recover on the contract. *Supra;* and *Williston on Sales,* (2nd Ed.), sec. 191, pp. 355-357; *Hawkins v. Graham,* Holmes, J., 149 Mass. 284, 21 N. E. 312; *Williston on Contracts* (Rev. Ed.) vol. 3, secs. 675A, 677; *A. L. I., Restatement, Contracts,* vol. 1, secs. 265 (2). See 46 A. L. R. 866. The case of *Mosler Safe Co. v. Thore,* 217 Mass. 153, 104 N. E. 574, will not be found to be in conflict with the position here stated, when the facts and the reasoning of the court are considered. The article which the seller offered for sale was a standard type of safe with which the third party who was

selected to make the inspection was familiar, and the court held there was no necessity for a personal inspection when the inspector was so familiar with the standard kind of safes described in the letter of proposal that he was enabled to pass and approve the kind of safes offered for sale without personal inspection. The inspection was not for operation nor was it concerned with a special machine and its capacity to perform a specific work with respect to particular objects. So, the cases are not analogous.

The testimony offered by the plaintiff tended to support this theory of the case. As there was evidence from which the jury might find, as the plaintiff's prayer submitted to the jury to find, that the arbiter had refused personally to act, and that the plaintiff had fully performed all that had been promised on its part, and, as no special exceptions were filed to the prayer granted on the part of the plaintiff, as required by the statute in respect of an erroneous submission of facts of which there is no testimony or of questions of law, the court does not find such substantial error in plaintiff's otherwise good prayer as would require a reversal. Code, art. 5, sec. 10; 2 *Poe, Pl & Pr.*, secs. 304, 306. The defendant's demurrer prayers for a directed verdict in its favor, and its other rejected prayers, were properly refused. They presented, in various forms, the erroneous position that the plaintiff could not recover on the ground that the refusal of the arbiter personally to inspect the machine and to observe its operation was immaterial, because his failure to approve and accept the machine was based upon the opinion and conclusions of employees of the buyer who had themselves inspected and seen the machine in operation. The error of this contention has been seen to lie in the failure to recognize that the arbiter was charged with a nondelegable duty, and that good faith required of him that this duty be discharged after a personal inspection of the machine, and the observation of its operation, capacity, and product. *Supra.*

The prayers which were granted at the request of the

defendant adequately submitted its defense on the facts susceptible of being found by the jury. These prayers in effect instructed the jury that if the parties to the contract had subsequently agreed to substitute for the decision of S. C. Miller the decision of Holman Bryant, and that the substituted party had personally conducted tests of the machine to determine its acceptability under the terms of the contract, and had in good faith refused to approve and accept said machine, then the plaintiff could not recover, even though the jury might believe the said Bryant was mistaken in his decision on the merits of the machine. 46 *A. L. R.* 867, 868. The burden of proof to show fraud or bad faith in Bryant was put upon the plaintiff. Of these instructions the defendant had no cause to complain. The issues of fact went to the jury on the mutually exclusive theories of the parties on prayers which, in the court's opinion, present no reversible error.

The questions on the prayers are presented by the fourth bill of exceptions and the remaining three exceptions on the record were to the rejection of testimony offered on the part of the defendant. The first three bills of exceptions relate to the refusal of the court of trial to admit letters interchanged among the officials of the defendant corporation in regard to the machine which the plaintiff had delivered to the defendant pursuant to the contract of September 27th, 1934. The correspondence originated in two letters of S. C. Miller, the president, to Holman Bryant, an employee of the defendant in charge of its bottling operations. The first letter is dated March 13th, 1935, and returned to Bryant the invoice of the plaintiff, with a memorandum attached requesting approval. The president informed his subordinate that the invoice is not to be approved "until the entire supervisory personnel in the bottling room is thoroughly satisfied not only with the operation of this machine but its influence on the economy of our bottling operation." The second letter is dated April 10th, and directs Bryant to get expressions of opinion on the machine, and states that the seller wants payment, but

has been informed that "unless this machine meets with your (Bryant's) approval, no payments will be made." The exclusion of this hearsay testimony, with its self-serving declarations, and the repudiation of the clear condition of the written contract, were clearly correct, and their exclusion are the occasion of the first two bills of exceptions. The reply of Bryant to Miller of April 15th, with copies of three similar letters from Bryant to three executive subordinates, requesting a written opinion of the machine; and the answers of the three subordinates, and a letter from an employee, all dated either the 12th or 13th of April, are shown by the fourth bill of exceptions to have been excluded on the offer of the defendant corporation. In all of these communications, the five writers severally described in detail their observations of the manner in which the machine did its work, and their opinion that the machine was not satisfactory. The testimony was offered while Miller was testifying. It was hearsay and self-serving, irrelevant and immaterial, and was rightly rejected. Aside from its being hearsay, its sole effect would be to show a futile attempt by the agent named to delegate the performance of what the agent had been selected to do in person but which he had determined not to do, and clearly did not do. There is nothing equivocal in the conduct of the arbiter with respect to his refusal personally to inspect and observe the machine and its work and capacity, and so the declarations of himself and the servants of the buyer are not admissible as verbal acts. *Wigmore, Evidence* (2nd Ed.), sec. 1772-1775; and see *Simmons v. Haas,* 56 Md. 153, 166; *Aetna Indemnity Co. v. George A. Fuller Co.,* 111 Md. 321, 341, 344, 73 A. 738, 74 A. 369; *City of Baltimore v. Ault,* 126 Md. 402, 429, 94 A. 1044; *Fisk v. Cole,* 152 Mass. 335, 25 N. E. 608; *Curtis v. Boston Ice Co.,* 237 Mass. 343, 129 N. E. 444, 447.

Finding no reversible error, the judgment will be affirmed for the reasons stated in this opinion.

*Judgment affirmed, with costs to the appellee.*

BOND, C. J., filed a dissenting opinion as follows.

The buyer in this case was a corporation which had on its staff men of superior skill and judgment with respect to the machinery required. And in view of that fact, especially, I think business men such as those who executed this contract would not contemplate and intend that "acceptance and approval" by the head of the corporation should require the exercise of any personal judgment by him. The written contract controls on the point, I think, and my construction differs.