FRIEL ET AL. t/a S. E. W. Friel Fancy
Canned Foods *v.* HANDLEY

[No. 232, September Term, 1971.]

*Decided February 9, 1972.*

The cause was argued before HAMMOND, C. J., and
BARNES, SINGLEY, SMITH and DIGGES, JJ.

*Douglas G. Worrall,* with whom were *William B. Som-
erville* and *Smith, Somerville & Case* on the brief, for
appellants.

No brief filed on behalf of appellee.

DIGGES, J., delivered the opinion of the Court.

This case reaffirms the stark reality that despite innumerable technological advances over the years man still has not acquired the ability to control weather. In the summer of 1969 this State was victimized by extremely diverse climatic conditions; it encountered severe drought in June and July but was then inundated with almost continuous rainfall in late July and early August. This appeal from the Circuit Court for Dorchester County (Mace, J.) arises as the direct result of the latter condition. The appellee, Henry Handley, contracted in February of that year to plant, cultivate and maintain about 50 acres of yellow sweet corn for appellants, S. E. W. Friel, Jr. and J. R. Friel, co-partners trading as S. E. W. Friel Fancy Canned Foods. Appellants operated a vegetable canning business in the central portion of the Delmarva Peninsula and purchased their sweet corn supply from farmers in the vicinity. The Friels provided the various farmers with seed corn, directed when the crop should be planted and pursuant to clause eleven of their own standard form contract, appellants had "the right to send equipment to the fields in order to harvest this corn whenever *in their sole judgment, it is ready for them to harvest.*" (Emphasis added.)

At the time of sowing, late July was projected as the date for picking appellee's crop, which was planted in separate fields of 39 and 16 acres. At the end of that month, in a five day period, July 19-23, the Cambridge-Vienna area of Dorchester County, where Handley's fields were located, was deluged by 3 to 4 inches of rainfall, although the subsequent four days, July 24-27, were dry. On Saturday, July 26, during this respite from the rains, Handley met with appellants' field manager and after determining the corn would be ready to pull in a few days, Tuesday, July 29 was designated as the picking date. The Friels did not come to get the crop on that appointed Tuesday, sending their crew instead to Delmar, Delaware. They claimed that because Handley's

fields had received an additional .8 of an inch of precipitation on Monday, July 28, the harvesting had to be postponed. Contending that continued rain in the next two days occasioned the need for further delay, appellants waited and then selected August 1 for picking since there had been no rain the day before. However, when appellants attempted to harvest the crop they experienced difficulty when some of their machinery became mired in the mud. After five hours of laboring the Friels called their crew in, stating that ground conditions necessitated the cessation of work. At that point only 3 tons of sweet corn had been picked, where normally 50 tons should have been. Later, that evening, the Friels sent Handley a telegram notifying him that he was required by clause eleven of their contract to hand pick the corn within the next four or five days, since appellants' mechanical equipment was unable to perform the task. That clause in its entirety reads:

> "Said party of the first part agrees that the said S. E. W. Friel has the right to send equipment to the fields in order to harvest this corn whenever in their sole judgment, it is ready for them to harvest. Said S. E. W. Friel agrees to pay cash for corn within a reasonable time after harvest. Should the packer's harvesting equipment be unable to harvest the grower's corn because of unfavorable weather conditions, unfavorable ground conditions, mechanical failure of harvesting equipment or for any other reason that would prevent said Corn from being mechanically harvested at the time corn had ripened to produce Fancy Whole Kernel Corn as determined by S. E. W. Friel's Field Department, then the grower, upon notice from S. E. W. Friel, shall arrange crews of labor to pull the grower's corn and supply mechanical equipment such as tractors, wagons, elevators, trucks, or other necessary equipment or labor to load

corn on S. E. W. Friel trucks on highways or solid roadways. S. E. W. Friel shall allow grower an additional $2.50 per ton for all Corn so delivered to his trucks."

The Friels desired that Handley harvest his crop as soon as possible because by August 1 it was already ripe and, upon reaching maturity, the older corn becomes the more it is downgraded, until eventually it is no longer marketable. In this case, if it was not pulled by about August 5 it would become worthless as sweet corn. Handley, however, made no effort to harvest his crop as requested by the telegram.[1] Similarly, appellants, citing an additional 4.8 inches of rainfall between August 1-5 as their rationale, did not again attempt to mechanically harvest the crop. In late September appellee instituted this suit for damages against the Friels alleging that their unreasonable failure to pick the corn was a breach of contract. At a bench trial Judge Mace, after concluding that the Friels could reasonably have harvested 23 acres of Handley's crop on August 1, entered a judgment in favor of appellee for $1,081.00.[2]

On appeal the Friels posit the argument that it is in their sole discretion to decide when to pick the corn and their judgment can only be challenged upon a showing of bad faith. They next claim that since their judgment was not attacked on this ground, the trier of fact, by con-

---

1. Appellants have not claimed that they are entitled to damages resulting from Handleys failure to hand pick the corn.

2. Handley did not suffer a total loss since he sold the crop as field corn. The computation resulting in the award of $1081.00 is not disputed. Judge Mace arrived at this figure in the following manner:

| | | |
|---|---|---|
| 23 acres produce 122.22 tons of corn at $18.00 per ton = | | $2,199.00 |
| Less amount received from the sale of 23 acres of field corn | $725.00 | |
| Less amount paid for corn harvested on August 1 | 59.40 | |
| Less amount owed for seed furnished Handley by appellants | 334.00 | |
| | 1,118.40 | |
| | | $1,080.60 |

cluding the Friels could and should have mechanically harvested some of the corn, in effect erroneously and without authority rewrote the contract. In support of this contention appellants rely on the language of *Lynn v. B. & O. R. R. Co.*, 60 Md. 404, 415 (1883).

> "By this contract, which is perfectly lawful, the parties expressly agreed to submit the question whether the ice to be supplied was 'good, clear, and solid,' to the judgment of this third party, and his judgment, no matter how erroneous or mistaken it may be, or how unreasonable it may appear to others, is conclusive between the parties, unless it be tainted with fraud or bad faith. To substitute for it the opinions and judgments of other persons, whether judge, jury or witnesses, would be to annul the contract, and make another in its place."

Similar statements of equal lucidity can be found in the following cases. *Volos, Ltd. v. Sotera*, 264 Md. 155, 286 A. 2d 101 (1972), [both majority and dissent] ; *First National v. Warren-Ehret*, 247 Md. 652, 657-61, 233 A. 2d 811 (1967) ; *Ferris v. Polansky*, 191 Md. 79, 59 A. 2d 749 (1948) ; *Distilleries v. Machine Works*, 174 Md. 12, 197 A. 599 (1938) ; *Devoine Co. v. International Co.*, 151 Md. 690, 136 A. 37 (1927) ; *B. & O. R. R. Co. v. Brydon*, 65 Md. 198, 3 A. 306 (1886). We do not quarrel with this statement of law but find it inapplicable to the facts here as we conclude the Friels have misread and misinterpreted their own contract. The word "ready" in clause eleven is subject to more than one interpretation and among the possibilities, its meaning can be construed as "ripe" or "mature," in which case appellants' discretion is limited to solely determining when the corn is ripe for harvest. But assuming *arguendo,* to the Friels' benefit in this case, that "ready" has a more expansive meaning, then it can be claimed that the decision as to when to harvest the crop was in the judgment of appellants and unless there was a showing of fraud or bad

faith, the determination cannot be disturbed by a court. *Stamatiades v. Merit Music,* 210 Md. 597, 614, 124 A. 2d 829 (1956). In any event, however, that discretion is restricted to a determination of *when* the crop is to be picked. Nowhere does the contract provide that once appellants are "ready" and actually manifest their readiness by beginning the harvest, can they stop laboring when in their sole judgment physical conditions preclude their continuing. The pertinent clause, already quoted, states in part:

> "Should the packer's harvesting equipment be unable to harvest the grower's corn because of unfavorable weather conditions, unfavorable ground conditions . . . or for any other reason that would prevent said Corn from being mechanically harvested at the time corn had ripened to produce Fancy Whole Kernel Corn as determined by S. E. W. Friel's Field Department, then the grower . . . shall arrange crews of labor to pull the grower's corn . . . ."

The reference to S. E. W. Friel's Field Department explicitly confines its duties to solely determining when the crop has *ripened* to produce Fancy Whole Kernel Corn. Since the clause does not specify that a particular person decides if the weather conditions render the continuation of mechanized harvesting impractical, then the propriety of the decision to terminate work because of impracticality must be resolved by the trier of fact when there is conflicting testimony on this point. To hold otherwise would cause what appellants have already admitted is an onerous result, *i.e.* having the court rewrite this agreement.

In the case before us, Judge Mace, as trier of fact, found that 23 acres of the total Handley had sown could reasonably have been picked by machine on August 1 and the Friels' failure to do so constituted a breach of contract. He based his ruling on the statements of two witnesses who unequivocally related that, despite the physi-

cal impediments the appellants have alleged, at least 23 acres could still have been mechanically harvested. Therefore, since there was competent testimony which supports the trial judge's conclusions and we do not find them to be clearly erroneous under Maryland Rule 886, we affirm the judgment.[3]

> *Judgment affirmed. Costs to be paid by the appellants.*

---

3. If the transaction involved in this case is governed by Art. 95B of the Maryland Code (Uniform Commercial Code—Sales), the same conclusion would have resulted. However, since the applicability of that statute was not considered by either of the parties in their briefs or at oral argument, nor by the trial court, we will not consider this issue here.