# DORSEY BROS., INC. *v.* ANDERSON

[No. 198, September Term, 1971.]

*Decided February 10, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY, SMITH and DIGGES, JJ.

*Raymond S. Smethurst, Jr.,* with whom were *Robert B. Taylor* and *Adkins, Potts & Smethurst* on the brief, for appellant.

*Thomas S. Simpkins* for appellee.

DIGGES, J., delivered the opinion of the Court.

This dispute is almost identical to the controversy in another case decided this week and both revolve around the weather conditions during the summer of 1969 in which extreme drought and then almost continuous rainfall played havoc with Maryland's farm community. The other appeal, *Friel v. Handley,* 264 Md. 433, 287 A. 2d 23 (1972), concerned itself with the problem of harvesting corn during the rainy days of late July and early August. The case now before us, removed from Somerset County to the Circuit Court for Wicomico County (Travers, J.), presents the alternate problem of the drought and its effect on a snap bean crop in June and July of 1969.

The appellee, Howard Anderson, orally contracted to plant and cultivate three separate fields of beans totaling about 28 acres, located in Somerset County, for the appellant, Dorsey Brothers, Inc. Under the terms of this verbal agreement, Dorsey was to determine when the beans were ripe for harvest and then send machinery to pick them at its own expense. It was anticipated that Anderson's crop would be ready to gather in very early July. However, during the latter part of June there was a serious drought condition throughout much of this area which affected the beans in two ways: not only did

it speed up the maturing process but it also dehydrated them. Anderson became apprehensive about the effects of this weather on his crop and notified appellant that it should be picked on Tuesday, July 1, because in his opinion the beans would mature by then. He was told by Mrs. Elizabeth Dorsey, an owner of appellant, that the pickers would be there on that date. Anderson's fields had also been inspected by Paul Lynch, Dorsey's co-ordinator of harvesting, and he indicated on June 30 that he would first pick Carroll Ennis' crop, which had been planted earlier, and then return to get appellee's beans. It took until July 2 to harvest at Ennis' farm but rather than proceed to Anderson's immediately, Lynch had the crew go elsewhere because he felt that other fields were of better quality. Finally, on July 4 Lynch brought the equipment to appellee's farm and began the picking. However, after covering less than four acres of the first field the crew was instructed to cease its labor and begin instead on the second. Once there, Lynch had the pickers only harvest certain areas and after a short time he had them discontinue this work also. While on the second tract, the machinery was driven in such a way as to destroy much of the unpicked crop. Lynch did not even attempt to harvest the beans on the third field but informed appellee that the remainder of the crop was not acceptable. Of the two loads already picked, one was subsequently rejected in New York by the processor because it contained excess "cull" material.[1] Based on Dorsey's failure to harvest the beans, Anderson filed this suit claiming damages for breach of contract. At a jury trial appellee was awarded $4,500 and from the ensuing judgment this appeal is taken.[2]

---

1. Cull material includes any beans which are too dry, broken, misshapen, or otherwise unmarketable.

2. Apparently the jury adopted appellee's calculations. These are: 28.8 acres at 5,500 lbs. per acre = 158,400 lbs. at 3.5¢ per lb.       $5,544.00
Less amount appellee received for beans harvested     $990.64
                      990.64
             $4,553.36

Dorsey first argues that since the ascertainment of the optimum time for harvesting was in its sole judgment, this discretionary matter can only be challenged upon a showing of bad faith or fraud. It then claims that since this was not indicated, no issue was presented for the jury's determination. In support of its position appellant quotes from *Stamatiades v. Merit Music*, 210 Md. 597, 614, 124 A. 2d 829 (1956):

> "Though much is left to the discretion of the party to whom the thing or service must be satisfactory, and the judgment of a court is not to be substituted for the honest, even though misguided, judgment of the party, his judgment must be exercised honestly and in good faith. His dissatisfaction 'must be real and not pretended, capricious, mercenary, or the result of a dishonest design.'"

We concur with this statement but find it is not completely determinative of the issue here. The decision of when to pick Anderson's snap beans, by the terms of the contract, was in the discretion of Dorsey alone and we agree that in the absence of bad faith or fraudulent design its judgment cannot be disturbed. However, in the case before us there was evidence offered which, if believed, could demonstrate that appellant's failure to harvest the crop was unreasonable and not made in good faith.

To begin with there was testimony that the effect of hot temperatures and drought on any snap beans is not only to accelerate the maturing process but also to dehydrate the crop. But in spite of this appellant's field manager, Lynch, elected not to pick the beans on July 1. Since this type of crop, even under normal weather conditions, must be harvested within a few days of when it ripens, a three day delay during a drought is evidence from which a jury may conclude bad faith was exhibited. Lynch's testimony that the picking was additionally put off from July 3 to July 4 so another farmer's beans of

better quality could be harvested, may similarly be an arbitrary decision and evidence of bad faith. Indeed, if Anderson's crop on Thursday July 3 was not in the best condition, another day's postponement, when time was so crucial, certainly did not benefit the beans. There was also the testimony of two impartial witnesses whose cumulative experience in farming, including the cultivation of snap beans, was eighty years. Both these gentlemen had inspected appellee's fields on July 6 and it was their opinion that this was still a good crop; one of the men even said he considered this a "wonderful yield" of beans.

This evidence, though not conclusive of a capricious or mercenary design by appellant, does present an issue to be submitted to the jury for its determination. While the jury may not substitute its own judgment for that which Dorsey honestly made, it surely can conclude from the evidence presented that appellant's decision not to harvest the beans was unreasonable and manifested bad faith. *Friel v. Handley*, 264 Md. 433, 287 A. 2d 23 (1972); *Volos, Ltd. v. Sotera*, 264 Md. 155, 286 A. 2d 101 (1972); *First National v. Warren-Ehret*, 247 Md. 652, 657-61, 233 A. 2d 811 (1967); *Ferris v. Polansky*, 191 Md. 79, 59 A. 2d 749 (1948); *Distilleries v. Machine Works*, 174 Md. 12, 197 A. 599 (1938); *Devoine Co. v. International Co.*, 151 Md. 690, 136 A. 37 (1927); *B. & O. R. R. Co. v. Brydon*, 65 Md. 198, 3 A. 306 (1886); *Lynn v. B. & O. R. R. Co.*, 60 Md. 404 (1883).

The same conclusion would be reached if we decided this case were governed by Art. 95B of the Maryland Code (Uniform Commercial Code—Sales). However, since the applicability of that statute to the type of transaction involved here was not considered by appellant in its brief and not fully discussed at oral argument, we will await another opportunity before considering this question.

Dorsey next contends that Judge Travers erroneously instructed the jury as to what circumstances must be found to exist before Anderson would be entitled to recover. The disputed statement was:

> ". . . if you find from the evidence that the plaintiff fully performed his part of the contract and that the beans were marketable and ready for harvest on July 1, 1969—I think that's it, wasn't it?
>
> (Appellee's attorney) Yes, sir.
>
> (The Court) on July 1, 1969, or at any time thereafter and the defendant failed, refused, neglected or otherwise did not harvest the beans, then the plaintiff is entitled to a judgment for value of the beans produced according to the contract less such amount as heretofore has been paid or credited to the plaintiff on that account."

Appellant argues that the effect of this remark was to authorize a verdict in Anderson's favor without the need for showing that Dorsey acted in bad faith. This statement of the trial court, by itself, is seriously deficient in the manner in which it relates the law governing this case and were it the extent of the judge's remarks on this point, appellant would doubtless be entitled to relief. However, this is but a small part of the total instruction, taken out of context. Judge Travers' very next statement was:

> "Now further, at the request of the defendant, the plaintiff is not entitled to recover unless he satisfies the jury by the evidence that on July 4, 1969, the beans which he grew for the defendant were of such a quality as to meet defendant's normal and customary criteria for harvesting and the rejection of his beans by the defendant was done fraudulently or in bad faith.
>
> But in order to find the defendant guilty of bad faith in rejecting the beans as mentioned, it's incumbent upon the plaintiff to establish by clear and satisfactory evidence. It's not enough to establish the bad faith charge that the defendant rejected the beans which the jury may believe it ought to have accepted or that it re-

jected the beans which, in the opinion of the Court, the plaintiff or other witnesses it should have accepted.

That is, again, because an honest decision by the defendant on the question of satisfactory quality must be accepted, however mistaken, misguided or unreasonable the jury might consider it.

Therefore, in order to maintain a charge of bad faith in this case, the jury must find that the judgment and action of the defendant, its agents, servants or employees, in rejecting the beans was the result of bad faith, that is, pretended, capricious, mercenary or the result of dishonest design.

In order to establish that the plaintiff is entitled to recover in this case, it's not enough that the evidence shows disagreement between the plaintiff and defendant as to when the beans should have been harvested, but it's incumbent upon the plaintiff to establish that in making the contract—granted decision when to harvest, defendant acted capriciously, mercenarily, or as the result of a dishonest design."

This last quoted portion of the instruction certainly clarifies, amplifies and corrects very explicitly any defect which preceded it. Recently, when faced with a similar problem in *State v. Foster,* 263 Md. 388, 283 A. 2d 411 (1971) we said:

"It is a well established rule that when objection is raised to a court's instruction, attention should not be focused on a particular portion lifted out of context, but rather its adequacy is determined by viewing it as a whole."

See also *Alston v. Forsythe* (and cases cited therein) 226 Md. 121, 135, 172 A. 2d 474 (1961) ; *Christ v. Wempe,* 219 Md. 627, 639, 150 A. 2d 918 (1959) ; *Reindollar v.*

*Kaiser,* 195 Md. 314, 319-20, 73 A. 2d 493 (1950). In this case the instruction, considered in its entirety, fully presented the appellant's defenses; in fact it may have included more than Dorsey was actually entitled to receive. No reversible error can rest upon this claim.

The final argument appellant offers is that three instances of error occurred during the trial which necessitates reversal of the judgment and the granting of a new trial.

It is initially claimed that the circuit court judge's refusal to allow the use of newspaper articles, to refresh the recollection of an opposition witness, was error. However, our reading of the record discloses that these news items, though Dorsey indicated they were to be utilized for that reason, in reality, were intended as contradictory evidence. The witness, William Anderson, appellee's son, had testified that he did not consider the weather conditions of late June and early July as a drought. Clearly he did not display the need to jog his memory on this issue and therefore the use of the newspapers, for that reason, was unnecessary. Of course the veracity of his testimony was for the trier of fact to determine. It should be noted that the purpose of the newspaper stories from The Daily Times of Salisbury was to factually exhibit that there was a drought. However, the articles only spoke in general terms of the weather conditions around the area. Not only were these news items vague and uninformative about conditions at Anderson's farm but ironically, Mrs. Dorsey in responding to a related question at trial, said:

> "I mean different weather conditions. Even though a few miles apart, the weather conditions sometimes are different and, you know, things like that."

In any event the use of the news articles here was a matter of judgment for the trial court and it did not abuse its discretion.

It is next contended that error was committed when

the trial court refused to admit reports showing the quality and yield of beans grown on a farm in close proximity to Anderson's crop. However, this type of data was not really useful since there was no attempt to show that the other beans were grown like Anderson's, in the same type of soil, under the same conditions, with the same amount of moisture (natural or irrigative), or even the same variety of seed was sown. Without a basis being set for the making of a comparison, the information offered would not be helpful to the jury. We find no fault with this ruling.

The final instance of error upon which Dorsey relies in this appeal is the trial court's failure to sustain an objection to remarks made by Anderson's counsel in closing argument. In his conclusory remarks the attorney said:

> "A processing plant works like any other manufacturing outfit and you ladies and gentlemen are entitled to use your own experience and judgment on how things work. Now we know processing plants process so much a day.
> (Appellant's counsel) Objection to this.
> (The Court) I think it's a fine inference.
> (Appellee's attorney) Was there any reason why these beans were turned down aside from what they think—say is dehydrated?
> You ladies and gentlemen of the jury are entitled to use your experience and good intelligence to find out why things like this happen."

We have long held that counsel has great latitude in the presentation of closing argument and any restriction on his remarks is within the trial court's sound discretion. *Drug Fair v. Smith*, 263 Md. 341, 283 A. 2d 392 (1971); *Middendorf, Etc., Co. v. Milburn Co.*, 137 Md. 583, 113 A. 348 (1921). As before we find no abuse of this discretion. However, in any event Dorsey did not request that the court take remedial action; it simply objected. Appellant neither asked that the jury be instructed to

disregard the statement nor did it seek a mistrial. We recently were faced with the same exact factual situation in *Tully v. Dasher*, 250 Md. 424, 440, 244 A. 2d 207 (1968) where there was an objection made, without more, to opposing counsel's remarks in closing argument. There we said:

> "In any event, there was no motion for a mistrial or any request by counsel for the defendants to the trial court to instruct the jury to disregard the remarks, so that the alleged error is not preserved for our consideration."

The *Tully* decision is controlling here. We conclude that no error was committed by the trial court and therefore affirm its judgment.

*Judgment affirmed. Costs to be paid by appellant.*